John Lee ARNOLD, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 169–70.

United States Court of Appeals,
Tenth Circuit.

Nov. 5, 1970.

Douglas K. Dusenbury, of Martin, Porter, Pringle, Schell & Fair, Wichita, Kan., for appellant.

Ronald A. Ginsburg, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before HILL and SETH, Circuit Judges, and THEIS, District Judge.

HILL, Circuit Judge.

Arnold pleaded guilty to bank robbery in January, 1967. Approximately three years later he filed a 28 U.S.C. § 2255 petition, alleging that the sentencing court failed to comply with Rule 11, F. R.Crim.P., 18 U.S.C.[1] and that petitioner

1. In the course of the opening statement at the evidentiary hearing, petitioner's appointed counsel seemed to abandon the Rule 11 argument in view of Halliday v.

United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). In any event, the point is not raised on appeal.

was mentally incompetent at plea time. After a full evidentiary hearing, the district court denied the petition and Arnold appeals.

Appellant was arrested in October, 1966, and charged with two counts of bank robbery. Counsel was appointed to represent the accused and on November 9, 1966, in the first appearance before the district court, the judge was informed that the accused had a history of mental problems. An 18 U.S.C. § 4244 psychiatric examination of Arnold was requested, and with the United States posing no objection, the appointed lawyer was allowed to choose a doctor. An examination was conducted by a psychiatrist on November 10, 1966. Following that meeting, the doctor concluded that Arnold had the capacity to understand the nature of the proceedings against him, that he was capable of cooperating with his attorney, and that he was able to stand trial. At the arraignment on November 18, 1966, the trial court concluded that notwithstanding the prior mental problems of the defendant, the psychiatric report indicated no current impairment to his standing trial. Whereupon, he was held mentally competent to stand trial, and the proceedings went forward. No request was entered then, or later, for a hearing on the issue of Arnold's mental competency to stand trial.

On January 24, 1967, Arnold expressed a desire to change his plea to guilty. Before a new plea was accepted, the court restated its earlier finding of mental competency and again specifically found that the defendant was at that time mentally competent to stand trial. The court continued by inquiring if Arnold knew he had the right to maintain the former plea, go to trial, and introduce evidence on the issue of insanity as a defense to the charges. The defendant said he understood; that he had fully gone over it with his lawyer and that he had decided against that course of action. Arnold said he had not been threatened or induced to plead guilty; that the matter rested on his own free will and

choice; and that he reached the decision to change his plea on his own volition. Next, in accord with Rule 11, the court fully satisfied itself that there was a factual basis for the plea. Finally, the trial court accepted the guilty plea.

The next appearance before the trial court was for sentencing on February 3, 1967. Again the court went over the matter of Arnold's mental condition and inquired whether there were any objections to the finding that defendant was mentally competent to stand trial. The defendant, his counsel, and the United States prosecutor all responded in the negative. Arnold was then sentenced to ten years.

Upon the filing of this 2255 petition, the court appointed counsel and ordered a further psychiatric examination and report. Thereafter, Arnold was accorded a full evidentiary hearing. At the hearing Arnold told the sad story of his life. Between the ages of 14 and 42, Arnold was sentenced to jail some fourteen times, totalling around 59 years, of which he has served a cumulative sum of about 13 years in jail and 9½ years in mental institutions. He also said he was an epileptic and had experienced seizures. Arnold's testimony illustrated a life of mental and legal difficulties, but beyond that, it did little to shed light on his alleged defective mental status at plea time. In fact, he admitted he knew the charge was bank robbery and that he understood the nature of the charge and thought his lawyer represented him well. The reasons given for pleading guilty were that he was on a bread and water diet and the fact that he had a record.

A second witness was in jail when Arnold was first booked. His testimony was that Arnold was irrational when he was first brought in, but on subsequent occasions he appeared rational. A third witness visited appellant on several occasions while he was in jail and observed Arnold as emaciated, untruthful and forgetful. Neither of these two men confirmed, in terms, the allegations of Arnold.

The attorney who represented Arnold during the trial stages testified that he had gone over at least part of his client's past in some detail. After learning of his background, the lawyer asked for a psychiatric examination, thinking there might be a chance for an insanity defense. But, after reading the report of the doctor, he concluded that such a defense was not viable, so he abandoned it. The lawyer said he felt some caution, but no hesitation, in allowing Arnold to plead guilty. He had discussed the charges, penalties, etc., fully with Arnold, and in his opinion the latter met the legal requirements of competency to stand trial.

The psychiatrist who last examined appellant in February, 1970, found no present conspicuous evidence of mental disorder but thought Arnold may have suffered from some form of schizophrenia in the past. But he testified that appellant was not a schizophrenic "at the time and to the extent that he could not cooperate with counsel or who could not know the nature of the consequences" at the plea time. Petitioner's counsel then read the Dusky test, infra, to the doctor and asked whether Arnold came within its purview. The doctor responded affirmatively: "I think he was most likely totally competent to understand the nature of the plea that he was entering and the possible consequences if he was convicted after entering that plea."

The last witness was the psychiatrist who examined Arnold on November 10, 1966. He stated that he was aware of the prior facts of appellant's life as had been related at the hearing, except for the epilepsy. On that point he asserted that that fact would not alter his diagnosis. Summarizing his diagnosis, the psychiatrist stated: "my findings were that this person had the mental capacity to understand the proceedings against him and to be able to aid and cooperate in his own defense and that this person * * * [was] competent to stand trial."

Following the conclusion of the evidence the trial court found that Arnold had pleaded guilty voluntarily; that he was under no compulsion; that no threats or promises of any kind were made against or to him; that he was free from mental disease, defect, or derangement; that he had the capacity to understand the nature of the proceedings against him; that he was able to aid and cooperate in his own defense; and that he was not incompetent to stand trial at the time of the guilty plea.

Upon appellant's allegation of error, we first consider the trial court's failure to conduct a hearing on the issue of mental competency prior to sentencing. The test for determining mental competency to stand trial is "whether he [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). An earlier codification of this test appears in 18 U.S.C. § 4244 wherein it is stated that a court shall, upon its own motion, cause a mental examination of an accused where there is reasonable cause to believe that the person charged is "so mentally incompetent as to be unable to understand the proceedings against him or property to assist in his own defense * * *."

Any doubt as to the duty upon the trial court faced with this situation was erased in Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The Court held that where the evidence before the trial court raises a "bona fide doubt" as to an accused's mental competence to stand trial, the judge, on his own motion, must conduct a hearing to decide that issue.

In the case at bar, defense counsel requested and the trial court ordered a psychiatric examination pursuant to 18 U.S.C. § 4244. That section provides that where the psychiatric report indicates a present state of mental incompetence, a hearing must be conducted for a legal determination of the issue. However, if the report of the psychiatrist concludes that the defendant is not presently men-

tally incompetent, the trial court is not required to hold a competency hearing prior to accepting a plea at arraignment. Kienlen v. United States, 379 F.2d 20, 29 (10th Cir. 1967); Coffman v. United States, 290 F.2d 212 (10th Cir. 1961). When a trial court is put on notice of a defendant's prior mental irregularities, it may justifiably turn to the procedures dictated by section 4244. Under this statutorily instituted process, when the examining psychiatrist detects no present mental incompetency, the question posed by the "bona fide doubt" test of Pate is properly resolved in the negative, as it obviously was here.

■ The record discloses that the trial court was extremely careful to satisfy itself that Arnold was mentally competent at all stages of the proceedings. The court fully explained the defendant's rights; the charges were detailed; a section 4244 examination was ordered; judicious questioning determined that the defendant was mentally competent to stand trial and that there was no objection to such finding; and the defendant was extensively questioned on his change of plea so as to comport with the knowledge and voluntary aspects of a plea. All reasonable suspicions of defendant's infirm mental condition were apparently put to rest with the psychiatric report. After its reception, neither Arnold nor his counsel contended or testified that the accused was not mentally competent to knowingly and voluntarily enter a plea of guilty to the charges against him, or to aid in his defense. In sum, a review of the entire record verifies that due process requirements were met. *Cf.* Pate v. Robinson, supra; Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (1966).

■ Next, appellant challenges the propriety of the court deciding mental competency after an evidentiary hearing conducted three years after the fact. We considered an identical issue in Crail v. United States, 430 F.2d 459 (10th Cir. 1970), and therein discussed the Dusky and Pate rationales. Without reiterating what we said there, it is manifest that the complicating factors present in Dusky and Pate are not present in the instant suit, and did not preclude a retrospective analysis of Arnold's mental competency. First, the examining psychiatrist was clearly instructed as to the proper legal criteria for deciding mental competency; second, there were no equivocations within the psychiatric report regarding the legal tests; and third, the mental analysis was contemporaneous with the plea. On the basis of these distinguishing circumstances we do not read either Dusky or Pate as requiring an opportunity for Arnold to plead anew. *See* Crail v. United States, supra.

■ Alternatively, appellant attacks the court's finding at the evidentiary hearing, on the basis that the weight of the evidence did not support the finding of mental competence. We will not attempt, in our review of the record, to weigh conflicting evidence. Findings of fact rendered by a district court after an evidentiary hearing, including those respecting mental competency, are to be sustained unless clearly erroneous.[2] The testimony of both lay and professional witnesses, as hereinbefore set forth, provides ample basis for the decision of the trial court.

Affirmed.

2. Crail v. United States, 430 F.2d 459 (10th Cir. 1970); Martinez v. United States, 423 F.2d 479 (10th Cir. 1970);

Wolcott v. United States, 407 F.2d 1149 (10th Cir. 1969).