John A. BOLTZ, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–765.

Court of Criminal Appeals of Oklahoma.

Jan. 7, 1991.

Rehearing Denied Feb. 13, 1991.

---

29. *Spirgis v. Circle K Stores, Inc.,* 743 P.2d 682, 685 (Okla.Ct.App.1987).  (Approved for publica-tion by the Supreme Court, 1987).

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen. and Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

John A. Boltz, appellant, was tried by jury for the crime of Murder in the First Degree in the District Court of Pottawatomie County, Case No. CRF–84–97. Appellant was represented by counsel. The jury returned a verdict of guilty and sentenced appellant to death. The trial court sentenced appellant accordingly. From this judgment and sentence, appellant appeals.

On April 18, 1984, at approximately 9:30 p.m., the Shawnee Police Department received a call from the appellant's wife, Pat Kirby. Ms. Kirby informed the police that she was at her mother's house and that appellant, who had been drinking, had forced his way into the house and had made accusations about her to her mother. Ms. Kirby further stated that when she threatened to call the police, appellant left. Ms. Kirby gave the dispatcher the appellant's car tag number and his home address.

Ms. Kirby called the police department later and inquired as to whether appellant had been taken into custody. When she was informed that he had not been arrested, Ms. Kirby went to her son Doug's house. After they had been there for a short time, appellant called and talked to Doug. The conversation lasted only a few minutes. A short time later, appellant called back and again talked to Doug. After this call, Doug left to go to appellant's trailer house. Immediately thereafter, appellant called a third time and Ms. Kirby answered. Appellant told her, "I'm going to cut your loving little boy's head off." Appellant also threatened Ms. Kirby. Ms. Kirby immediately called the police and reported the threats. Ms. Kirby told the dispatcher where appellant lived and stated that she was going over there.

Vita Witt, who lived next door to appellant, testified that during that evening she heard the screeching of brakes, a car door slam and loud and angry voices. When she heard a sound like someone getting the wind knocked out of him, she looked out the window and observed a man later identified as Doug Kirby, lying on the ground on his back, not moving. She testified that appellant was standing over him screaming obscenities and beating him. Ms. Witt told her son to call the police. Ms. Witt testified that she observed appellant pull something shiny from his belt and point the object at the man. Ms. Witt testified that when appellant looked up and saw her watching, she turned away out of fear.

Appellant was arrested in Midwest City, Oklahoma, at the American Legion Hall after a friend informed the police of appellant's location. Appellant had informed the friend that he had killed his stepson and had probably cut his head off. Appellant surrendered to the police upon their arrival.

Dr. Fred Jordan testified that the autopsy of Doug Kirby revealed a total of eleven wounds, including eight stab wounds to the neck, chest and abdomen, and three cutting wounds to the neck. One of the wounds to the neck was so deep that it had cut into the spinal column. The carotid arteries on both sides of the neck were cut in half and the major arteries in the heart were also cut.

Appellant testified that Doug Kirby had called him that evening and threatened to kill him. Appellant claimed that when Doug arrived at his house, he kicked in the front door and as he went for a gun, appellant stabbed him twice, but did not remember anything after that point. A .22 caliber revolver was recovered from the passenger seat of Doug's car. The gun had no blood on it although the seat was splattered with blood.

Initially, appellant contends that the trial court did not provide him with an independent mental examination and did not conduct a post-examination competence hearing. In response to an application for determination of competency, the district court held a hearing on September 14, 1984, in conformance with 22 O.S.1981, § 1175.3, and found that there was doubt as to the competency of appellant and or-

dered that he be examined at Eastern State Hospital. The chief forensic psychiatrist answered the statutorily required questions that the appellant was competent to stand trial, was able to assist his attorney in the preparation of his defense, and was not a mentally ill person or person requiring treatment as defined by 43A O.S.1981, § 3. The psychiatrist noted that the appellant may be suicidal and prescribed Triavil 4–25 tablets three times a day to curb depression.

Appellant cites *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) for the proposition that the State may be obligated to provide an indigent defendant with access to competent psychiatric assistance in preparing his defense under certain circumstances. However, to trigger this process, the defendant must demonstrate "to the trial judge that his sanity at the time of the offense is to be significant factor at trial ..." 470 U.S. at 74, 105 S.Ct. at 1092, 84 L.Ed.2d at 60. A bald assertion in a pleading that the murder was committed while the defendant was in a state of insanity, along with a defense at trial of self-defense is not sufficient to make the required demonstration.

■ Clearly, error occurred in this case when the trial court failed to conduct a post-examination competency hearing pursuant to 22 O.S.Supp.1988, § 1175.4(A). Therefore, this Court issued a unanimous order remanding this case to the district court to make findings concerning the feasibility of determining appellant's competency to stand trial in light of *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), as well as findings of his competency to stand trial when he did. On remand, the trial court determined that it was feasible to make the determination, and a jury found that appellant was competent at the time of his trial.

Appellant claims that his judgment and sentence should have been reversed due to the error committed at trial, and that this Court has denied him his right to due process under the Fourteenth Amendment by remanding solely for a post-examination competency hearing. Although the record

in some cases has resulted in reversal of convictions on this issue, *see Kelly v. State*, 735 P.2d 566 (Okl.Cr.1987) and *Scott v. State*, 730 P.2d 7 (Okl.Cr.1986), failure to conduct a competency hearing concurrently with trial is not *per se* violative of due process. *See Anderson v. State*, 765 P.2d 1232 (Okl.Cr.1988) and *Rowell v. State*, 699 P.2d 651 (Okl.Cr.1985). This view is shared by several other courts. *See Bundy v. Dugger*, 850 F.2d 1402 (11th Cir.1988); *United States ex rel. Bilyew v. Franzen*, 842 F.2d 189 (7th Cir.1988); *United States v. Hutson*, 821 F.2d 1015 (5th Cir.1987); *Wheat v. Thigpen*, 793 F.2d 621 (5th Cir. 1986), *reh'g denied* 797 F.2d 977 (1986), *cert. denied* 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987); *United States v. Johns*, 728 F.2d 953 (7th Cir.1984) and *Arnold v. United States*, 432 F.2d 871 (10th Cir.1970). It is the opinion of this Court that if a defendant's competency at the time of trial can be meaningfully determined at a subsequent time on the basis of credible and competent evidence, then error committed by a district court in failing to hold a hearing at the proper time can be cured. If the procedural defect is thereby cured, any due process attack based upon the defect must fail.

The present case was remanded for competency proceedings some three years after trial. The competency hearing itself was not conducted until six months later, after appellant was granted a continuance. However, these delays do not necessarily preclude a meaningful retrospective determination. *See United States v. Makris*, 535 F.2d 899 (5th Cir.1976), *cert. denied* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977). The trial court had the records of Eastern State Hospital, where the competency examination was performed, along with the testimony of one of the examining physicians, appellant's trial attorney, and the sheriff who held appellant in custody for over 200 days. The trial transcript and an audio tape of appellant's own testimony at trial were available for review. Furthermore, the judge presiding in the remand hearing was the same judge who presided at trial, and he had his own personal knowledge to draw upon. With such a wealth of

available evidence, the trial court properly determined that a retrospective competency determination was feasible. *Cf. Arnold v. United States, supra,* (competency determination after three years was valid where psychiatric exam was conducted contemporaneously with trial, the doctor was properly instructed concerning the legal questions involved, and the doctor made no equivocations concerning the diagnosis).

■ Appellant also claims that his rights were violated because the jury was permitted to consider his taped trial testimony. In accord with *Makris, supra,* and *Arnold, supra,* we must conclude that appellant's conduct and testimony at trial were not only properly admissible, but "provided a solid starting point for reliable reconstruction of the pertinent facts." *Makris,* 535 F.2d at 904. We find the evidence presented to the jury amply supported their finding that appellant was competent to stand trial when he did.

■ Appellate counsel asserts that appellant's failure to follow trial counsel's advice and accept a pretrial plea bargain for manslaughter in the first degree further evidences his incompetency. Clearly, in retrospect, such a decision was unwise. However, we cannot find that poor judgment, in and of itself, denotes incompetency. The defendant was quizzed by the Judge and by his own attorney as to his understanding of his rights and of his wish to go to trial. Defendant felt he could get a not guilty verdict because of self-defense, so this in and of itself does not show incompetency, only a lack of knowledge as to what was a good deal.

■ In his next assignment of error the appellant complains that the trial court improperly refused to excuse a prospective juror for cause when he said he would automatically vote for the death penalty if the appellant was found guilty, and that he would require the appellant to prove he was acting in self-defense. In context, the prospective juror, Whitaker, was being questioned concerning whether he believed that a person had a right to defend himself. Juror Whitaker gave a nonresponsive answer which caused defense counsel to change his line of questioning. In response to those questions Whitaker stated that if a person was guilty of taking another life, his life should be taken, regardless of what he did. The juror was not asked if he would consider a life sentence, and in fact, in response to questions concerning whether he would follow the instructions from the Court, he stated that he would. Questioning him further concerning self-defense, the trial court asked if he, as trier of fact, found that this was an appropriate case to consider self-defense, would he follow the court's instructions. Juror Whitaker stated that he would. At that point, the trial court denied the challenge for cause.

Although Juror Whitaker was not always responsive to the questions, and although many of his answers were unclear, he clearly responded that he would follow the law as instructed. Where a trial court refuses to remove a prospective juror who has unequivocally stated that he is unwilling to follow the law during the penalty phase by considering a life sentence, the court has erred. *Ross v. State,* 717 P.2d 117 (Okl.Cr.1986) *aff'd sub nom Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Juror Whitaker never made such a statement, and defense counsel never pursued this subject. Nor can we presume by the statement of Juror Whitaker concerning the necessity of appellant's proving self-defense that he believed appellant must prove his innocence. If defense counsel wished to show that Mr. Whitaker was unwilling to follow the law in these matters, he should have pursued the matter further. We can find no error in the decision of the trial court. Furthermore, even if error had been found, Juror Whitaker was excused by a peremptory challenge, and there is nothing in the record to show that any of the jurors who sat on the trial were objectionable. *See Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Therefore, this assignment of error is without merit.

■ Appellant alleges next that the jury was not a fair cross-section of the community and was unconstitutionally guilt prone

because the jurors were questioned about their views on the death penalty, and four were excused based upon their unwillingness to consider death as a punishment for the offense charged. The United States Supreme Court has addressed this identical issue in *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) and rejected the argument. The Court held:

> In our view, it is simply not possible to define jury impartiality, for constitutional purposes, by reference to some hypothetical mix of individual viewpoints. Prospective jurors come from many different backgrounds, and have many different attitudes and predispositions. But the Constitution presupposes that a jury selected from a fair cross-section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case.

*Lockhart*, 476 U.S. at 183, 106 S.Ct. at 1770. We therefore find the appellant's assignment of error to be without merit.

■ Appellant next complains that the trial court allowed the State to use the preliminary hearing testimony of Marlin Knouse without a proper showing of unavailability. The record reveals that Mr. Knouse had been hospitalized since September 20, 1984, that on October 9, the State was informed that he probably would be unable to attend the October 22nd trial because he had undergone gall bladder surgery and had a heart attack during his surgery. On Friday, October 19, Mr. Knouse went in for surgery a second time and defense counsel was informed that he would be unavailable as a witness the following Monday. The State filed a motion to use the preliminary hearing testimony, and a note from a doctor that Mr. Knouse would be unable to appear. Mr. Knouse's testimony concerned an admission by the appellant that he had killed his stepson, and appellant's subsequent arrest. We find no abuse of discretion and therefore no error. *See Lee v. State*, 600 P.2d 344 (Okl.Cr.1979) and *Perkins v. State*, 695 P.2d 1364 (Okl.Cr.1985).

■ Appellant also asserts that the trial court erred in refusing to allow him to testify concerning alleged threats to kill the appellant made by the victim shortly before his fatal stabbing, and also erred in refusing to allow the appellant to testify concerning an alleged admission by a man that he and the appellant's wife were having an affair. Appellant admits that these statements were hearsay, but attempts to show that both statements should have been admitted under exceptions to the hearsay rule. We need not decide whether this hearsay evidence was admissible under an exception because the appellant was able to present this information to the jury in other ways. After the objection was sustained which prevented the appellant from relating what he was allegedly told over the telephone by the victim, the appellant was asked what he did when he was through talking with the victim. He responded, "... I start trying to defend my life, because I know an attack is fixing to be made on me, because I've been told that." (Tr. 545) After telling what steps he took to prepare to defend himself, he stated, "I went over and started peeping out of this aluminum foil on the door to see if he was going to do what he screamed at me that he was going to do." (Tr. 545) Concerning his testimony about an alleged admission of an affair, he stated on cross-examination that, "I told [the victim] that I caught his mother with her lover, and that the man had confessed to an adulterous relationship with his mother for over three years. And that's the truth." Thus, the jury actually heard the information which the appellant complains was excluded and we find this assignment to be without merit. *See Burroughs v. State*, 528 P.2d 714 (Okl.Cr.1974).

■ Appellant next contends that the trial court failed to instruct on heat of passion manslaughter as a lesser included offense of first degree murder. After a review of the record, we find that the evidence simply did not support a heat of passion manslaughter instruction. *Walton v. State*, 744 P.2d 977 (Okl.Cr.1987). There

must be evidence for the court to instruct on heat of passion; here there was none. The court gave instructions on the defense of self-defense. The trial judge was correct as to his finding on the evidence and refusal to instruct on heat of passion. The evidence clearly showed appellant had a design to effect death. *See Brown v. State*, 777 P.2d 1355, 1358 (Okl.Cr.1989).

Appellant further argues that the trial court should have instructed on the lesser included offense of second degree murder, should have instructed regarding appellant's good character, and that the instructions on self-defense were confusing. Having failed to specifically object or submit proposed instructions in writing, these complaints are not properly preserved. *Nash v. State*, 685 P.2d 972, 974 (Okl.Cr.1984). After reviewing the instructions we find that they fairly and accurately state the applicable law. *See Dotson v. State*, 739 P.2d 538, 540 (Okl.Cr.1987).

Appellant also asserts that the trial court should not have given an instruction on flight because the evidence did not support it. We disagree. The record reveals that the appellant left the scene immediately after inflicting the wounds that caused the death of his stepson. He drove to the American Legion Hall in Midwest City, where a friend advised him to surrender to police. Appellant declined to do so. Subsequently, this friend called the police and when they arrived, appellant surrendered. The flight instruction defined flight, admonished the jury to determine whether the facts supported a conclusion that the appellant was fleeing, and instructed the jury that if they found beyond a reasonable doubt that appellant was fleeing, the fact was a circumstance which could be considered with all the other evidence in determining guilt or innocence. The instruction was properly given. *See Padillow v. State*, 501 P.2d 837, 841 (Okl. Cr.1972).

Appellant next complains that his sentence of death was influenced by passion and prejudice due to prosecutorial misconduct. Appellant admits that no objections were made to any of the comments. Hav-

ing failed to preserve possible error for review, we have examined the comments for fundamental error and find none. *See Foster v. State*, 714 P.2d 1031, 1040 (Okl. Cr.1986).

During the second stage, evidence of an unadjudicated burglary against appellant was admitted to support the aggravating circumstance that he would constitute a continuing threat to society. Appellant contends that the evidence was irrelevant and highly prejudicial. The evidence of which appellant complains demonstrated that the inner door facing of the victim's home was discovered splintered as a result of forcible entry the morning after his murder. The victim's brother testified that nothing was missing, but a picture was laying on the floor "shattered." Evidence had been offered during the first stage of trial that appellant had last spoken to his wife at the victim's home shortly before the murder, and that after telling her that he intended to cut her son's head off, he threatened to kill her within the hour. We find that this circumstantial evidence is strong enough for the jury to find that the appellant committed the subsequent burglary, and such evidence would make more probable that the appellant intended to kill his wife and therefore supports the aggravating circumstance of continuing threat. In *Johnson v. State*, 665 P.2d 815, 822 (Okl.Cr.1982), this Court held that prior unadjudicated acts of violent conduct are relevant to the determination of whether a defendant is likely to commit future acts of violence that would constitute a continuing threat to society. We find such evidence to be relevant in the jury's determination as to whether a person has a propensity to commit criminal acts in the future. We find no error.

The appellant alleges that the trial court improperly failed to instruct during the second phase of the trial that if jurors could not reach a unanimous verdict in sentencing, the court could impose a life sentence. As we have previously stated, such an instruction could improperly distract the jury from performing its duty of assessing the sentence, and the jury need

not be instructed concerning this rule of law. *See Fox v. State,* 779 P.2d 562, 574 (Okl.Cr.1989).

█ The jury found that the murder was especially heinous, atrocious or cruel. Appellant contends that the aggravating circumstance was applied in an unconstitutional manner in this case. We disagree. In *Stouffer v. State,* 742 P.2d 562 (Okl.Cr. 1987), this Court limited the application of this circumstance to those cases which involve torture or serious physical abuse to the victim prior to death. *See also Fox v. State,* 779 P.2d 562, 576 (Okl.Cr.1989). The record in the present case reveals that Doug Kirby was stabbed repeatedly while retreating from the trailer house in an attempt to escape. During the struggle he was finally overcome and collapsed in the yard. We find this to be sufficient evidence that he suffered serious physical abuse prior to death. The facts show that the deceased's stabbing occurred in the house, in the car and on the ground outside the car. His head was almost cut off; one must say that this was heinous, atrocious or cruel.

█ In his next two assignments of error, appellant contends that the aggravating circumstance of "the existence of a probability that the defendant would commit acts of violence that would constitute a continuing threat to society" is vague on its face, that no definitive guidance has been provided to construe the statute, that it has been evaluated in an arbitrary manner, and that the trial court should have specifically defined its elements. We have previously addressed these issues, holding that "... this aggravating circumstance is specific, not vague, and is readily understandable." *See Liles v. State,* 702 P.2d 1025, 1031 (Okl.Cr.1985). Furthermore, it is not being evaluated in an arbitrary manner, *see Foster v. State,* 714 P.2d at 1040. *See also Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). We find no error.

█ Appellant next contends that there was insufficient evidence to support the jury's finding of the "continuing threat" circumstance. The record reveals that ap-

pellant lured the victim to his trailer, and while he was en route, appellant called Ms. Kirby to tell her that he was going to kill Doug and threatened to kill her within the hour. There was further evidence that appellant had attempted to enter Doug's house in an attempt to find her. Other testimony revealed that appellant had bragged about killing before. These facts combined with the sheer callousness in which this murder was committed amply support the jury's finding of this aggravating circumstance. *See Robison v. State,* 677 P.2d 1080, 1088 (Okl.Cr.1984).

█ Appellant next contends that the trial court's instructions failed to provide particularized guidelines for considering mitigating circumstances. As explained by this Court in *Foster v. State,* 714 P.2d 1031, 1041 (Okl.Cr.1986), particularized guidance is not required. Where the jury's attention is focused on the circumstances of the appellant's case, that guidance is sufficiently precise. In the case before us the Court instructed that evidence of mitigating circumstances offered by the appellant included his state of mind arising from his traumatic domestic circumstances, that his surrender to authorities was voluntary, that he had not been previously convicted of a crime, and that he had demonstrated his propensity to act in aid of others. We find the instructions to be sufficient.

█ Appellant next asserts that his sentence should be modified to life imprisonment because the mitigating evidence outweighed the aggravating evidence. However, after a review of the record we find sufficient evidence from which the jury could have found that the aggravating circumstances outweighed the mitigating circumstances. *See Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985). Appellant further argues that the death penalty in his case is disproportionate to the punishment imposed in similar cases. However, in *Foster, supra,* we explained that a proportionality review is no longer required under our present statutory scheme. Therefore, this assignment of error is meritless.

In his final assignment of error, appellant contends that he received ineffective assistance of counsel. He argues that his trial counsel failed to present available evidence to support the appellant's self-defense claim, that trial counsel failed to present available evidence to support the theory that appellant was acting under such emotional and mental pressure that he could not have acted with malice aforethought, and that trial counsel presented no mitigating evidence during the penalty phase of the trial. To establish a claim of ineffective assistance of counsel, appellant must first show that counsel's performance was deficient and secondly, that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court directed that judicial scrutiny of counsel's performance must be highly deferential, and warns that it is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Id.*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

Appellant argues that trial counsel failed to fully develop evidence that the initial struggle occurred inside the trailer house which was consistent with appellant's testimony, that his physician could have testified concerning the change in his mental state which she had observed, and that other witnesses also could have testified concerning his changed mental state. Having examined these arguments, and affidavits of individuals stating what they would have testified had they been called, we nevertheless remain unconvinced that trial counsel's performance was deficient. To quote the Tenth Circuit Court of Appeals,

"[A]n attorney who makes a strategic choice to channel his investigation into fewer than all plausible lines of defense upon which he bases his strategy are reasonable and his choices on the basis of those assumptions are reasonable...."

An attorney's decisions not to interview witnesses and to rely on other sources of information, if made in the exercise of professional judgment, is not ineffective counsel.

*United States v. Glick*, 710 F.2d 639, 644 (10th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984).

Concerning the appellant's complaint that trial counsel failed to present mitigating evidence in the penalty phase of his trial, the record reveals that character witnesses testified for the appellant during the first stage of the trial, and this evidence was incorporated into the second stage where the trial court gave instructions on the mitigating evidence presented by the appellant. Accordingly, this assignment of error is without merit.

Finally, we are required to determine whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. 21 O.S.Supp. 1985, § 701.13(C)(1). We find that it was not.

The judgment and sentence is AFFIRMED.

AFFIRMED.

PARKS, P.J., specially concurs.

LANE, V.P.J., and BRETT and LUMPKIN, JJ., concur.

PARKS, Presiding Judge, specially concurring:

Initially, I feel compelled to address appellant's sixteenth assignment wherein he contends that the "continuing threat" aggravating circumstance is vague and that Oklahoma has provided no definitive guidance on what must be proved to establish the same. Specifically, I am concerned with the definition of "society" as it relates to this aggravating circumstance and whether the "sheer callousness" in which a murder was committed can support a jury's finding that a defendant constitutes a continuing threat.

The majority herein correctly states that this Court has previously upheld the "continuing threat" aggravating circumstance as being specific, not vague, and readily understandable, and has determined that the calloused manner in which the crime

was committed, without more, may support this aggravating circumstance. Indeed, this writer has authored several opinions, and concurred in a number of others, which have reached these conclusions. And while I am not presently prepared to abandon my opinion regarding the validity of the "continuing threat" circumstance, I agree with appellant that more definitive guidance is needed.

Title 21 O.S.1981, § 701.12(7), defines the aggravating circumstance at issue as follows: "The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to *society*." (emphasis added). What is meant by "society," I am unsure. Barring escape, a convicted murderer sentenced to life imprisonment will never again pose a threat to free society.[1] The term "society" must therefore be interpreted to encompass prison society if § 701.12(7) is to be evaluated in a non-arbitrary manner. However, this Court has yet to announce such an interpretation.

I am also concerned about this Court's rulings that the callous nature of a murder, standing alone, may support the "continuing threat" aggravating circumstance. The word "callous" is defined as "emotionally hardened." Webster's II New Riverside University Dictionary 220 (1988). This definition is strikingly similar to the following:

[T]he term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.

Oklahoma Uniform Jury Instructions— Criminal (OUJI–CR) 436. While some "callous" murders may alone support the "continuing threat" circumstance, it would appear, based upon the foregoing, that many such murders would best be classified as being "heinous, atrocious or cruel." *See* 21 O.S.1981, § 701.12(4). However, this Court has failed to specifically define which types of murders will alone support the finding of a "continuing threat."

In his tenth assignment of error, appellant contends that the trial court erred in admitting evidence of a burglary at the victim's home the morning after his murder. I agree. It is my opinion that the circumstantial evidence concerning the burglary did not exclude every reasonable hypothesis except that of appellant's guilt. *See Dickson v. State*, 761 P.2d 860, 862 (Okl.Cr.1988); *Rudd v. State*, 649 P.2d 791 (Okl.Cr.1982). However, on the basis of *stare decisis*, I must apply the standard announced by the majority to determine whether the sheer callousness of the offense supports the jury's determination that appellant constitutes a continuing threat. Having carefully considered the brutal nature of the murder at issue, I find that the introduction of the burglary evidence did not effect the outcome of appellant's trial.

I also continue to adhere to the views expressed in my special concurrence in *Foster v. State*, 779 P.2d 591, 594 (Okl.Cr. 1989), regarding the validity of the heinous, atrocious or cruel aggravating circumstance, and reiterate my opinion that failure to conduct a post-examination competency hearing prior to trial mandates reversal. *Anderson v. State*, 765 P.2d 1232, 1234 (Okl.Cr.1988) (Parks, J., dissenting).

---

1. I make this assertion fully cognizant of the fact that a defendant sentenced to a term of "life" imprisonment will, in reality, become eligible for parole consideration after serving a portion of his sentence, thereby giving rise to the possibility that he may again threaten free society. However, it is well settled that jurors may not consider the parole policies of the executive branch of this State when arriving at a sentence. *See Nguyen v. State*, 769 P.2d 167, 173 (Okl.Cr.1988), *cert. denied* — U.S. ——, 109 S.Ct. 3264, 106 L.Ed.2d 609. ("[I]t is improper for a trial court to instruct on the eligibility of a defendant for parole.") We must therefore presume that a jury, in following the law given to it by the trial court, will consider a "life" sentence to mean a term of imprisonment for the remainder of a defendant's life. Arguably, such a presumption may not be said to exist under the present statutory scheme, whereby a defendant may be sentenced to a term of "life without parole." *See* 21 O.S.Supp.1987, § 701.9(A). However, no such provision existed at the time of appellant's trial.

However, I yield to the majority view as a matter of *stare decisis*.

Finally, I must disagree with the majority that a proportionality review is no longer required under Oklahoma's present statutory scheme. I believe that the application of 21 O.S.Supp.1985, § 701.13(C), to cases pending on appeal at the time the statute was passed, as was the present case, renders the enactment an *ex post facto* law. *See Green v. State*, 713 P.2d 1032, 1041 n. 4 (Okl.Cr.1985). *See also Foster v. State*, 714 P.2d 1031, 1042 (Okl. Cr.1986) (Parks, P.J., specially concurring). However, I have independently applied 21 O.S.1981, § 701.13(C), to the facts of this case and find that the sentence imposed is proper.

On the basis of the foregoing, I concur that the Judgment and Sentence of death should be affirmed.