Richard Tandy SMITH, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–87–290.

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1991.

Rehearing Denied Nov. 19, 1991.

272

Terry J. Hull, Assistant Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Beverley Quarles Watts, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

Appellant, Richard Tandy Smith, was convicted in the District Court in and for Canadian County, Case No. CRF–86–394, of Murder in the First Degree. The jury recommended imposition of the death penalty. Judgment and sentence was entered in accordance and from this Judgment and Sentence, appellant appeals.

The record shows that on July 21, 1986, Pamela Rutledge, Rita Jo Cagle, and appellant were riding together in a two-door

Ford Thunderbird in southwest Oklahoma City. They stopped at two houses to acquire drugs. While they were at the second house, John Cederlund arrived. He left along with appellant, Rutledge, and Cagle sometime after midnight. The four proceeded west on Southwest 29th Street until the road turned to gravel and they had crossed a quarter of a mile into Canadian County. Appellant, who was driving, pulled into the driveway of an abandoned farm house.

The State presented evidence that appellant got out of the car and opened the trunk. He called Rutledge, who went to the back of the car. He informed her that he was going to rob Cederlund. When Rutledge told appellant that Cederlund was known to be rough sometimes, appellant responded, "I'll kill the f—ing punk."

Appellant went back to the driver's door and picked up a sawed-off 12 gauge shotgun from the floorboard. He pointed the gun at Cederlund and demanded drugs and money from him. Cederlund gave appellant some drugs, but said he had no money. Appellant then ordered Cederlund out of the car. Cederlund got out through the passenger side and stood by the door as appellant walked around the back of the vehicle. Appellant again demanded money. Cederlund said he had no money and appellant might as well kill him. Cederlund pushed the gun away. Then appellant pushed Cederlund and fired the gun. The blast hit Cederlund in the chest, made a single entry wound less than an inch in diameter, and destroyed Cederlund's heart. Cederlund died as a result of that wound.

Appellant was arrested on July 22, 1986, while driving the Thunderbird. A search of the car produced twelve live Federal 12 gauge number eight load shotgun shells. Another live shell was found during a subsequent search of appellant's apartment. A firearms expert testified that the pellets and shot cup recovered from Cederlund's body had come from the same brand, gauge, and load.

Blood consistent with Cederlund's was discovered on the end of the passenger door. An expert in blood spatter analysis testified that the car door had to be open for the blood to have gotten there. He further concluded that the person the blood came from had been shot and had been one to two feet away from the car door, producing "high velocity" blood spatters.

Appellant's pre-trial statement was introduced. Initially, he denied having been with Rutledge and Cagle after going to the second house. When detectives told him that witnesses had seen him, he admitted that he had driven to the deserted farm house, but claimed that he remained in the car. Rutledge, Cagle, and Cederlund got out of the car and walked some fifty feet up the driveway. Appellant claimed that Rutledge returned to the car, retrieved the shotgun from the trunk, went back to Cederlund and shot him.

## I. PRETRIAL ISSUES

### A.

Prior to trial, appellant sought to have his competency to stand trial determined. The trial court ordered an examination to be conducted. Appellant seeks reversal claiming that the examination was not adequate and that the doctor conducting the exam was incompetent.

The examination in this case consisted of an interview conducted by a psychologist in the jail where appellant was being held. The psychologist determined that appellant was aware of the charges against him. Appellant remembered the circumstances surrounding his arrest and recalled several hearings being conducted in his case. He was aware of the potential consequences he was facing. He said he was able to communicate his thoughts to his attorney, and that his attorney understood him. He was also satisfied with the work his attorney was doing. On the basis of this interview, the doctor answered the statutory questions in 22 O.S.1981, § 1175.-3(E), and found appellant competent to stand trial.

The relevant questions in determining whether a criminal defendant is competent to stand trial are (1) whether the defendant is able to understand the nature of the

charges and proceedings brought against him, and (2) whether he is able to effectively and rationally assist in his defense. 22 O.S.1981, § 1175.1(1). *See also, Miller v. State*, 751 P.2d 733 (Okl.Cr.1988). The doctor's interview in this case was designed to focus on these questions. On the basis of evidence presented to the district court, the examination was adequate to determine whether appellant was competent to stand trial, and appellant's contention lacks merit.

### B.

Appellant also sought funds for an investigator to assist him prior to trial. He now seeks reversal because the trial court denied those funds.

■■■ The district court may, in its discretion, authorize defense counsel in a capital case to obtain services which are reasonably necessary to permit the defendant to adequately prepare and present his defense at trial. 22 O.S.Supp.1985, § 464(B). However, "No application for compensation of such expert witnesses and other services . shall be heard by the trial court prior to final trial disposition." Thus, it is clear that appellant's application for approval of funds was filed prematurely.

■■■ Furthermore, before the statute authorizes access to expert services, a capital defendant must demonstrate that the services are necessary and that he is financially unable to pay for them. *See also Stafford v. Love*, 726 P.2d 894, 896 (Okl. 1986). The record of the hearing on appellant's application shows that appellant had only one witness. Defense counsel informed the court that the witness would testify concerning his qualifications and willingness to investigate, and his willingness to perform services within the statutory limitations of payment. Such testimony would not satisfy the requirement to demonstrate necessity, and the court properly denied the application.

■■■ Finally, even if the trial court had erred by denying access to services, the transcript of proceedings prior to voir dire shows that appellant did, in fact, have a private detective assisting defense counsel in the preparation and presentation of the defense. We find that any error could not have resulted in a miscarriage of justice, nor that a substantial violation of appellant's constitutional or statutory rights occurred. We will not reverse. 20 O.S.1981, § 3001.1.

### II. ISSUES RELATED TO JURY SELECTION

During voir dire, several prospective jurors were excused because they said they could not consider imposing the death penalty under any circumstances. Appellant now challenges the trial court's refusal to permit rehabilitation of one of those persons. He also challenges the trial court's refusal to excuse another juror for cause because he claims that juror would not consider a sentence of life imprisonment.

■■■ In regard to the juror who was excused, the record shows that the trial court asked the entire jury panel whether it could consider assessing either life in prison or the death penalty. Prospective juror Elkins responded that she could not. The trial court continued questioning.

THE COURT: Mrs. Elkins, are you advising me that under any circumstances, that regardless of the law, the facts and circumstances of this case, you would not inflict the death penalty?

MRS. ELKINS: No, I wouldn't.

THE COURT: All right. I asked you if that's what you were telling me.

MRS. ELKINS: Yes.

THE COURT: You are saying, then, that you would not be able to consider the imposition of the death penalty under any circumstances?

MRS. ELKINS: Yes, sir.

Because Mrs. Elkins' views on capital punishment would have prevented or substantially impaired the performance of her duties as a juror, the trial court acted properly in excusing her for cause. *Wainwright v. Witt*, 469 U.S. 412, 420, 105 S.Ct. 844, 850, 83 L.Ed.2d 841 (1985). We also find that the trial court did not abuse its discretion by refusing to permit defense

counsel to inquire further. *See Banks v. State*, 701 P.2d 418, 423 (Okl.Cr.1985).

■ In regard to the juror who was not excused, the record shows that prospective juror Cartwright told the court that he could consider either punishment. He responded similarly to questions by the State. However, when pressed by defense counsel as to when he would impose the death penalty, he responded, "[I]f it was just brutal first degree murder ..., I wouldn't even consider a life sentence." The State objected to excusing Cartwright for cause, and defense counsel suggested that the court make further inquiry. After the court explained the sentencing procedure, Cartwright once again stated that he would be able to consider either punishment under the instructions given by the court. The trial court acted properly in refusing to dismiss Cartwright for cause.

### III. ISSUES CONCERNING JURY INSTRUCTIONS: FIRST STAGE

#### A.

■ Appellant claims that the trial court committed reversible error by ruling as a matter of law that Rutledge and Cagle were not accomplices and refusing to give any of appellant's requested jury instructions on corroboration. The test to determine whether a witness is an accomplice is whether the witness could be indicted for the offense for which the accused is being tried. *Nunley v. State*, 601 P.2d 459 (Okl. Cr.1979). Whether a witness is an accomplice may be a matter of law for the trial judge, or the evidence may require the question to be submitted to the jury. *Id.*

■ The State prosecuted appellant under the felony murder doctrine, claiming that the death occurred while appellant was engaged in the commission of robbery with a dangerous weapon. 21 O.S.Supp.1987, § 701.7(B). Cagle testified that while she was riding to the abandoned farm house, she asked appellant where they were going. Appellant told her they were going to try some drugs that Cederlund had. Cagle had no knowledge that appellant was going to rob Cederlund, and no plan to rob Cederlund had ever existed. When the car stopped, it was appellant who decided to rob Cederlund. It was appellant who picked up the shotgun and pointed it at Cederlund. It was appellant who demanded money and drugs. It was appellant who took the drugs from Cederlund. There was absolutely no evidence at trial that Cagle ever became involved in the robbery. Where there is no evidence that a witness participated in, planned, or encouraged the commission of a crime, her mere presence during its commission will not make her an accomplice. *Mills v. State*, 737 P.2d 573, 574 (Okl.Cr.1987). Appellant's story that Cagle and Rutledge shot Cederlund contained no indications that the women took personal property from the victim. Cagle could not have been charged under the felony murder doctrine, and the trial court properly determined as a matter of law that she was not an accomplice.

■ The evidence is the same as to Rutledge with the exception of her comment that Cederlund was known to be rough. Even if this comment could be construed as aiding or abetting in the commission of the robbery, her testimony was wholly corroborated by Cagle's. Thus, the requirement that an accomplice's testimony be corroborated, 22 O.S.1981, § 742, was satisfied. Additional corroboration existed where appellant was arrested on the day of the murder while driving a car on which blood consistent with the victim's was found, and in which the police discovered ammunition of the same type used to kill the victim. There was no evidence that anyone other than appellant had dominion and control of that vehicle. Independent evidence in this case tended to connect appellant to the commission of the crime, and any error in failing to present the accomplice issue to the jury was completely harmless. *Cf. Howard v. State*, 561 P.2d 125, 132 (Okl.Cr.1977).

#### B.

■ In another proposition contained in a supplemental brief filed by leave of this Court, appellant claims that the trial court

erred by refusing his requested instruction on Rutledge's credibility because of her activities as a police informant. Although Rutledge had acted as an informant in other cases, there was no evidence presented at trial to show that she was acting as an informant when she acquired or gave information concerning this case. She was not paid for her activities, received no immunity in any case, and no evidence showed that she acted for personal advantage or vindication. *Cf.* OUJI–CR 844 (1981). It is not enough that the witness acted as an informant at some time in some unrelated case. Rutledge had no stake in the outcome of this case as a result of her informant work, and the trial court properly refused to give appellant's special instruction on credibility of informers.

The authorities on which appellant relies are clearly distinguishable. In those cases, the witnesses had been paid informers, *Orebo v. United States*, 293 F.2d 747 (9th Cir.1961); *United States v. Masino*, 275 F.2d 129 (2d Cir.1960); had been granted immunity, *Roquemore v. State*, 513 P.2d 1318 (Okl.Cr.1973); had received promises of reinstatement of military rank, *Smith v. State*, 485 P.2d 771 (Okl.Cr.1971); or the question of whether the witness was an informer was not an issue. *Todd v. United States*, 345 F.2d 299 (10th Cir.1965). Appellant's proposition must fail.

### C.

Immediately before appellant was arrested, he received a phone call. Witnesses said that appellant then looked out the front window, saw police, and climbed out of a window on the west side of his apartment. He got into the Thunderbird and started to drive away, but was stopped by officers. The officers had staked out appellant's apartment under orders to apprehend if appellant tried to leave in that car. Appellant objected to giving an instruction on flight. The objection was properly overruled. *Shipp v. State*, 725 P.2d 1274, 1275 (Okl.Cr.1986).

Appellant also seeks reversal claiming that the trial court gave an inaccurate instruction on flight. In *Farrar v. State*, 505 P.2d 1355 (Okl.Cr.1973), the defendant objected to giving an instruction on flight. He did not, however, suggest alternative instructions, and the issue was waived for appellate review. In this case, appellant offered no alternative instruction; therefore, the issue has been waived.

Finding no error which warrants reversal, the finding of guilt as to Murder in the First Degree is AFFIRMED.

### IV. ISSUES CONCERNING EVIDENCE: SECOND STAGE

In its Bill of Particulars the State asserted that appellant was previously convicted of felonies involving the use of threat of violence to the person, 21 O.S.1981, § 701.-12(1), and that a probability existed that appellant would commit criminal acts of violence that would constitute a continuing threat to society, 21 O.S.1981, § 701.12(7). Appellant now attacks the admission of evidence to support these aggravating circumstances and the sufficiency of the evidence to establish them.

### A.

After the jury returned a guilty verdict, the trial court conducted an *in camera* hearing on the presentation of evidence concerning prior violent felonies as required by *Brewer v. State*, 650 P.2d 54 (Okl.Cr.1982), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1990). Appellant agreed to stipulate concerning the use or threat of violence in his convictions of Assault and Battery with a Deadly Weapon, and Assault and Battery with a Dangerous Weapon. Before appellant signed the stipulation, though, the State informed the court that to support its other aggravating circumstance of continuing threat, it would use evidence connected with the prior convictions. The trial court overruled appellant's objection that the State should not be permitted to introduce the underlying facts. Upon that ruling, appellant withdrew his stipulation, but changed his mind again before the jury was called in. Appellant signed the stipu-

lation, and defense counsel signed it as to form only.

In *Brewer,* this Court determined that in many cases, the introduction of a judgment and sentence would be insufficient to prove the use or threat of violence to a person. Additional evidence would often be required. In order to avoid an unconstitutional shift in the burden of proof, and avoid an erroneous finding by the trier of fact that previous felonies involved the use or threat of violence, we established mandatory procedures. These procedures included giving the defendant

> the opportunity to stipulate that the prior felony conviction(s) alleged by the State did involve the use or threat of violence to the person ...

> If the defendant stipulates, the State's proof of the aggravating circumstances must be limited to introduction of the judgment and sentence in the prior felonies along with the defendant's written stipulation that the felonies involved the use or threat of violence to the person.

*Brewer, supra,* at 63.

More recently, in *VanWoundenberg v. State,* 720 P.2d 328 (Okl.Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986), we noted the Supreme Court's language concerning the circumstance of continuing threat. "What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." *Jurek v. Texas,* 428 U.S. 262, 275–276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976). This relevant information may include evidence from the crime itself, evidence of other crimes, admissions by the defendant of unadjudicated offenses, or any other relevant evidence. *VanWoundenberg, supra,* at 337.

Appellant claims that when the State relies upon the two circumstances found in this case, the direction in *Brewer* to allow only the minimal amount of evidence to support the aggravating circumstances conflicts with the Supreme Court's man-

date that the jury have all possible relevant information. Appellant argues that the holding in *Brewer* should control because the State could use the stipulations to prove the continuing threat. We are not inclined to treat the Supreme Court's language so lightly. Preventing the jury from hearing evidence relevant to a determination of the continuing threat circumstance would render meaningless the need to "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 1765, 64 L.Ed.2d 398 (1980) (footnotes omitted). Without relevant evidence to consider, any attempt to channel the sentencer's discretion would be futile. As long as the evidence is relevant to finding or refuting the continuing threat circumstance, it should be admitted.[1]

It is important to note that even though a defendant stipulates to the use or threat of violence in a prior conviction, that conviction might not demonstrate the continuing threat circumstance. For example, where a defendant used force in response to provocation but the provocation was not sufficient to provide a legal excuse, the defendant's use of force could result in a conviction for assault and battery, even though a capital sentencing jury could find that the amount of force used under the circumstances did not demonstrate either a past or future threat to society.

Relying upon bare stipulations could result in erroneous findings of continuing threat. Requiring the defendant to refute the implication of a threat to society would amount to a shift in the burden of proof onto the defendant's shoulders to prove the *absence* of the aggravating circumstance. These are the very considerations that compelled the decision in *Brewer.* They also compel the decision that when the State alleges the continuing threat circumstance, it must not only be permitted

---

1. This holding is in no way inconsistent with our decision in *Brewer.* In that case, the State did not assert the continuing threat circumstance. *See Brewer,* 650 P.2d at 58, n. 1. Where this circumstance is relied on, the language of the Supreme Court must control.

but *required* to present evidence that the defendant's behavior demonstrated a threat to society, and a probability that the threat would continue to exist in the future. However, the defendant should be informed, as appellant was in this case, that the State would introduce relevant evidence of continuing threat, even if he enters into a *Brewer* stipulation.

The evidence admitted in this case was highly relevant. In one conviction, appellant shot a man in the knee with a shotgun and then proceeded to beat his crippled victim over the head with the butt of the gun. Witnesses to the incident observed no apparent reason for the onslaught. However, another witness testified that appellant said he had shot a man in the leg for flirting with his wife. In the other conviction, appellant was driving and became angry when another driver honked at him on a highway ramp. On the highway, appellant pulled along side the other man and told him to pull over so they could fight, shouting his challenge through the open car windows. At one point, appellant rammed the other car from behind. The other driver finally decided to avoid appellant by exiting the highway. Appellant reacted by firing a shotgun at him. Appellant's extreme and violent reactions to these situations were probative of the continuing threat circumstance, and they were properly admitted.

### B.

Appellant asserts that the State failed to prove its aggravating circumstances. First, he claims that because his conviction was obtained on the uncorroborated testimony of accomplices, the facts of the murder itself could not be used to support the State's burden. We have already found that Cagle was not an accomplice, and that if any error occurred as to Rutledge, the error was completely harmless. The facts involved in the murder were properly submitted to the jury for consideration in the second stage of trial.

Appellant also claims that the State used the same evidence to support

duplicating aggravating circumstances. Where the same act or an indivisible course of conduct is used to establish multiple aggravating circumstances referring to the same aspect of a defendant or his crime, this Court and others have recognized that only one of the duplicated circumstances should be weighed against whatever mitigating factors the jury may consider. *See Green v. State*, 713 P.2d 1032, 1040 (Okl. Cr.1985). *See also Cook v. State*, 369 So.2d 1251 (Ala.1978); *People v. Harris*, 36 Cal.3d, 679 P.2d 433, 201 Cal.Rptr. 782 (1984), *cert. denied*, 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301; *Provence v. State*. 337 So.2d 783 (Fla.1976), *cert. denied*, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 *State v. Goodman*, 298 N.C. 1, 257 S.E.2d 569 (1979). In this case, although the State did rely upon appellant's prior convictions to support each of the aggravating circumstances alleged, the convictions were not used to show the same aspect of appellant or his crime.

The circumstance of prior violent felonies shows the aspect of a defendant as a violent and incorrigible person whose present act, viewed in conjunction with his past conduct, can be appropriately punished only by imposing the ultimate sanction. On the other hand, the continuing threat circumstance goes to the aspect of the need for protection of society from the defendant's probable future conduct. Although the jury must of necessity consider the defendant's past conduct in arriving at its prediction, this does not make his past and future aspects the same.

We also note that the prior convictions in the stipulation were not the only evidence used to support the continuing threat circumstance. At trial, appellant vehemently asserted that some of the facts connected to his convictions were not covered by the stipulation. As such, those facts could be considered even if the stipulation prevented introduction of the underlying facts of the crimes. The State incorporated evidence from the first stage, and Rut-

ledge took the stand again.[2] The jury could consider the facts surrounding the killing, Rutledge's description of the murder as "the most cold blooded thing I had ever seen," and a statement appellant made after shooting Cederlund that he had shot people twice before and gotten away with it. Appellant had also refused to permit Rutledge to call an ambulance for Cederlund, and had threatened Cagle and Rutledge against giving evidence to the police. Even without the prior convictions, evidence admissible under *VanWoundenberg, supra,* was sufficient to support finding a continuing threat.

Appellant cannot reasonably assert that the evidence was insufficient to prove the prior violent felony circumstance, as his prior judgment and sentences had been introduced along with his stipulation that those crimes involved the use or threat of violence.

## V. JURY INSTRUCTIONS: SECOND STAGE

■ In three different propositions and in a proposition raised in second and third supplemental briefs, appellant challenges the adequacy of several jury instructions given in second stage. Appellant failed to object to any of the second stage instructions given at trial, and even successfully opposed certain supplemental instructions which he now claims should have been given. Nor did appellant offer any requested instructions other than a specific list of mitigating factors which the jury could consider. That instruction was given in part and refused in part, and no issue has been raised concerning that instruction. The issues have been waived for appellate review. Furthermore, we also find that the jury was not precluded from considering sympathy during its consideration of the mitigating circumstances. *See Fox v. State,* 779 P.2d 562, 574 (Okl.Cr.1989).

## VI. SENTENCE REVIEW

■ Pursuant to 21 O.S.Supp.1987, § 701.13(C), this Court must conduct a mandatory sentence review. We have al-

ready found the evidence sufficient to support finding each of the aggravating circumstances relied on in this case. We further find no indication in the record that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finding no basis for reversal or modification, the judgment and sentence is AFFIRMED.

LANE, P.J., and LUMPKIN, V.P.J., concur.

BRETT, J., concurs in result.

PARKS, J., specially concurs.

BRETT, Judge, concurring in results:

While I agree that appellant's conviction and sentence should be affirmed, I write separately to the issue of whether the trial court should have appointed a private investigator for appellant. Title 22 O.S.Supp.1985, § 464(B), authorizes the district courts to provide expert witnesses, such as private investigators, to indigent defendants accused of capital offenses. The statute sets a limit of seven hundred fifty dollars ($750) as compensation for such experts. If there are extraordinary expenses incurred by experts, then an application for those extraordinary expenses may be made to the district court after final disposition of the case.

However, the compensation of an expert has nothing to do with whether appellant should have been afforded a private investigator at state expense. The statute provides for appointment of an expert at the discretion of the district courts. In order for appellant to prevail on this issue, he must be able to demonstrate that the trial court abused that discretion in this case. From the facts presented both at the trial level and now on appeal, it does not appear that any abuse of discretion occurred. The trial court conducted a hearing on appellant's motion for a private investigator.

---

**2.** Appellant briefly raises the argument that Rutledge should not have been permitted to testify because she was not endorsed as a witness in the second stage, and the substance of her testi-

mony was not previously disclosed to appellant. This issue was not raised at trial and has been waived for appellate review. *See Green v. State,* 713 P.2d at 1038.

Although appellant contends that he was precluded at that time from presenting evidence that would have demonstrated the substantial need for a private investigator, appellant has also failed on appeal to demonstrate how the lack of an investigator has undermined the outcome or fairness of the proceedings below. *See Caldwell v. Mississippi,* 472 U.S. 320, 324 f. 1, 105 S.Ct. 2633, 2637 f. 1, 86 L.Ed.2d 231, 236 f. 1 (1985). Without more, I find no abuse of discretion by the trial court.

PARKS, Judge, specially concurring:

Despite the fact that appellant neither objected to the second stage instructions nor submitted his own requested instructions, it continues to be the opinion of this writer that the so-called "anti-sympathy" instruction in the second stage is unnecessary and confusing to the jury where mitigating evidence has been introduced. *See Fox v. State,* 779 P.2d 562, 579 (Okl.Cr. 1989) (Parks, P.J., concurring in part/dissenting in part). Furthermore, while this writer is "not presently prepared to abandon my opinion regarding the validity of the 'continuing threat' aggravating circumstance," I believe that more definitive guidance is needed. *Boltz v. State,* 806 P.2d 1117, 1126 (Okl.Cr.1991) (Parks, P.J., specially concurring). As a matter of *stare decisis,* however, I must yield to the majority view regarding these issues.