1998 OK CR 76.

**Michael DeLOZIER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F 96–764.**

Court of Criminal Appeals of Oklahoma.

Dec. 31, 1998.

Rehearing Denied Feb. 22, 1999.

Robert G. Perrine, Talley & Perrine, Norman, Oklahoma, for defendant at trial.

Walter Hamilton, District Attorney, Gary Brock, Assistant District Attorney McCurtain County,, Idabel, Oklahoma, for the state at trial.

Lee Ann Jones Peters, Appellate Defense Counsel, Indigent Defense System, Norman, Oklahoma, for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant

Attorney General, Oklahoma City, Oklahoma, for appellee on appeal.

## OPINION

LANE, Judge:

¶1 Appellant, Michael DeLozier, was charged with two counts of First Degree Malice Murder in violation of 21 O.S.1991, § 701.7, in McCurtain County District Court Case No. CRF–95–258. The State filed Bills of Particulars for both counts alleging four aggravating circumstances for count one and three aggravating circumstances for count two.[1] A jury trial was held before the Honorable Willard Driesel, District Judge. The jury found DeLozier guilty of both counts of first degree murder and found in both counts that DeLozier knowingly created a great risk of death to more than one person and that there existed the probability that DeLozier would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, § 701.12(2) & (7). As to count one, the jury also found that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. 21 O.S.1991, § 701.12(5). The jury recommended DeLozier be sentenced to death for both counts. The trial court sentenced accordingly. From this Judgment and Sentence DeLozier has perfected his appeal.

## FACTS

¶2 Steven Morgan and Orville Lewis Bullard were camping in a converted step-van on the bank of the Glover River in northern McCurtain County. About 600 yards from their campsite was the "Tate bus," a bus also converted for camping. DeLozier, Glenney Dale Madison, Nathaniel Brandon Madison, and others were staying at the bus. Sometime on Saturday, September 23, 1995, DeLozier, the Madison brothers and James Oliver happened upon the Morgan campsite. They engaged in conversation for a few minutes.

¶3 While there DeLozier spotted a generator he thought would bring about $700 if stolen. Once back at the Tate bus, DeLozier mentioned stealing the generator. Several of the group, including DeLozier, talked about killing Morgan and Bullard and stealing everything they had.

¶4 That night, DeLozier, carrying a single shot shotgun, Glenny Madison, carrying a .22 caliber rifle, and Nathaniel Madison, set off for the Morgan site. Once there, according to Nathaniel Madison, DeLozier stepped into the camper and fired a single shot toward the rear with the shotgun. Then Glenny Madison stepped into the camper and fired a shot from the .22 rifle. The group then stood near Morgan's pickup where Glenny Madison fired several shots into the front of the camper. Nathaniel Madison shouted several times for the camper's occupants to come out, saying nothing would happen to them.

¶5 After several minutes, Morgan stepped from the camper. Upon doing so, DeLozier shot him once in the chest with the shotgun. DeLozier and Glenny Madison approached Morgan, and DeLozier took the rifle from Glenny and fired it once into Morgan's face.

¶6 The three loaded the generator and many other items from the campsite, some of which were taken from the camper, into Morgan's pickup and took the stolen items back to the Tate bus. On the final trip back to the Morgan camper, the trio encountered headlights coming from the Morgan camp site. All three bailed out from the pickup and left it sitting in the road.

¶7 George Vance was driving the vehicle which frightened the trio. He drove up on the Morgan camper and observed Morgan lying on the ground with his pants in his hands. Upon seeing this he turned around and got out as fast as he could. On his way out he found that he was blocked by Mor-

1.  The State alleged, in count one, that the defendant knowingly created a great risk of death to more than one person, the murder was especially heinous, atrocious or cruel, the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution, and the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. In count two, the State alleged the same aggravating circumstances except for the especially heinous, atrocious, or cruel aggravator.

gan's abandoned pickup. He got out of his vehicle and moved Morgan's pickup to the side of the road.

¶ 8 Morgan was found lying on his back outside the camper in front of the door. His body had been burned. Morgan's camper had been burned with the body of Bullard still lying in his bed. Morgan's pickup had also been burned.

¶ 9 DeLozier raises several propositions of error in his appeal. These propositions will be addressed in the order in which they arose at trial.

## JURY SELECTION ISSUES [2]

¶ 10 In proposition eight DeLozier argues that he was denied a fair and impartial jury. DeLozer claims that four jurors should have been removed for cause because they indicated an inability to fairly consider the penalties of life or life without the possibility of parole.

¶ 11 DeLozier first complains that the trial court erred in failing to remove juror 14 for cause as trial counsel requested. Juror 14 told the court that she could fairly consider all three punishments. The trial court did not abuse its discretion in refusing to remove juror 14 for cause. *Smith v. State,* 1991 OK CR 100, ¶ 16, 819 P.2d 270, 275, *cert. denied,* 504 U.S. 959, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992).

¶ 12 DeLozier complains that jurors 18, 41 and 49 should have been removed for cause, *sua sponte.* Trial counsel removed juror 49 by use of a peremptory strike. Jurors 18 and 41 remained on the jury panel. Trial counsel did not ask to have any of these three jurors removed for cause. Therefore, we review for plain error only. Plain error is error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense. *Cleary v. State,* 1997 OK CR 35, ¶ 81, 942 P.2d 736, 752, *cert. denied,* 523 U.S. 1079, 118 S.Ct. 1528, 140 L.Ed.2d 679 (1998). In reviewing the record in this case, we cannot say the failure to remove these jurors, *sua sponte,* rose to the

level of plain error. They each indicated a willingness to consider all three punishment options.

## FIRST STAGE ISSUES

¶ 13 In proposition two, DeLozier claims that the evidence was insufficient to convict him of first degree murder. DeLozier bases this argument on the premise that Nathaniel Madison's testimony was not sufficiently corroborated.

> A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

22 O.S.1991, § 742. If the accomplice's testimony is corroborated as to one material fact by independent evidence tending to connect the defendant with the commission of the crime, from that, the jury may infer that the accomplice speaks the truth as to all. *Sellers v. State,* 1991 OK CR 41, ¶ 30, 809 P.2d 676, 686, *cert. denied,* 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991).

¶ 14 Nathaniel Madison's testimony only needed to be corroborated in one material fact by independent evidence tending to connect DeLozier with the murders of Morgan and Bullard. The corroborative evidence need not be complete, independent proof of the crime; it is sufficient if it connects DeLozier to the murders. *See Spears v. State,* 1995 OK CR 36, ¶ 29, 900 P.2d 431, 440, *cert. denied,* 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995).

¶ 15 The corroborative evidence in this case was as follows: testimony that DeLozier admitted killing two men while he was threatening another inmate in the county jail; DeLozier's testimony that he left his camp site carrying the shotgun that was used in the murders; DeLozier's admission that he stole from the victim's campsite; and Vance's testimony that he observed Morgan lying on

---

2. The trial court used an anonymous numbering system in "labeling" each juror, thus we use the numbers in lieu of names in this Opinion.

the ground outside the camper before meeting DeLozier and the others on the road, corroborating Nathaniel Madison's story that Morgan and Bullard were killed while all three were at the Morgan camp.

¶ 16 DeLozier argues in proposition three that the introduction of Nathaniel Madison's out of court statements to O.S.B.I Agent Birchfield constituted improper bolstering. The State argues that the statements were admissible pursuant to 12 O.S. 1991, § 2801(4)(a)(2), which reads in part,

> A statement is not hearsay if ... the declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is ... consistent with his testimony and is offered to rebut an express or implied charge of recent fabrication or improper influence or motive....

¶ 17 In discussing this same issue in *Plotner v. State,* 1988 OK CR 139, ¶¶ 32–33, 762 P.2d 936, 943–44, *overruled on other grounds in Parker v. State,* 1996 OK CR 19, 917 P.2d 980 (1996), we said:

> that two foundational requirements must be met before such statements are admissible: "First, there must have been a suggestion that the witness has either fabricated his trial testimony or has been unduly influenced. Second, it must be established that the consistent statement was made prior to the time when there was a motive for the witness to lie or there was an exercise of improper influence." *quoting* 1 L. Whinery, Guide to the Oklahoma Evidence Code 263 (1985).

*See also Huckaby v. State,* 1990 OK CR 84, ¶ 13, 804 P.2d 447, 451; *Tome v. United States,* 513 U.S. 150, 115 S.Ct. 696, 705, 130 L.Ed.2d 574 (1995) (Fed.R.Evid.Rule 801(d)(1)(B), from which 12 O.S.1991, § 2801(4)(a)(2), is copied, requires that the prior consistent statement must have been made before the alleged motive to falsify arose). In the present case the that there was a suggestion that the witness had fabricated his trial testimony or had been unduly influenced is shown by defense counsel's cross-examination. In the cross-examination defense counsel made a point to carefully detail the plea agreement Nathaniel Madison had made with the State. Nathaniel was still charged with two counts of first degree murder; however, the counts would be amended to one count of conspiracy to commit murder and Nathaniel would receive a split sentence of two years imprisonment and ten years suspended, after Nathaniel testified against DeLozier. The date of this agreement was not in evidence.

¶ 18 According to Agent Birchfield, Nathaniel did not have an agreement with the State when he made his statement on September 26; therefore, this "plea agreement" could not have motivated Nathaniel to lie at that time. However, DeLozier argues that Nathaniel was motivated to lie when he made his statements to Birchfield because he had been arrested for murder. He had a motivation to "save his own skin."

¶ 19 The jury was instructed that accomplice testimony must be corroborated. We have held that Nathaniel's testimony was corroborated sufficiently to form evidence of DeLozier's guilt. Therefore, DeLozier was protected from accomplice testimony created from whole cloth.

¶ 20 We hold that the requirements of Section 2801(4)(a)(2) were met because Nathaniel's statements were made to Birchfield before his motivation to lie, the plea agreement was present, and because trial counsel implied that he was motivated to lie based on this plea agreement.

¶ 21 In proposition seven DeLozier claims that his constitutional rights were violated by the introduction of what he calls gruesome, inflammatory color photographs. State's Exhibits 15, 16 and 32 were introduced over DeLozier's objection. DeLozier specifically claims that the probative value of State's Exhibits 15 and 32 were outweighed by their prejudicial impact on the jury and that the photographs so infected the trial with unfairness as to deny due process and undermine the reliability of the death sentences.

¶ 22 This crime was a gruesome crime; two men shot and their bodies burned beyond visible identification. State's Exhibit 15 is a relatively close-up photograph of the

remains of Morgan. It shows his body lying perpendicular to his camper just outside the door. The photo was probative to show the location of his body in relation to the door of the camper and to corroborate Madison's testimony that Morgan was shot as he stepped from the camper.

¶ 23 State's Exhibit 32 is a close up of the charred remains of Bullard. It is nearly impossible to tell that these are the remains of a human being. The medical examiner used this photograph to explain how he was able to determine that Bullard was shot with a shotgun and a .22 rifle. This was the only photograph to show that Bullard was lying on his bed when he was killed.

¶ 24 Both of these photographs were relevant and probative. The proper test for admissibility of evidence is that relevant evidence will be admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice...." 12 O.S.1991, § 2403; *Willingham v. State*, 1997 OK CR 62, ¶ 37, 947 P.2d 1074, 1083, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). We find that the admission of these photographs did not constitute error.

■ ¶ 25 In proposition four DeLozier claims that the prosecutor violated his right to remain silent by using his pre-trial silence against him. DeLozier points to the portion of the prosecutor's questioning of him where he is asked how long it took for him to come up with the story he told the jury. The prosecutor asked, "How long did it take you to arrive at this story you just told this jury? Let's see it's May 20 something and this happened in September. That's five—that's eight months; right."

¶ 26 There was no objection to this questioning; therefore, we review for plain error only. *Hamilton v. State*, 1997 OK CR 14, ¶ 35, 937 P.2d 1001, 1010, *cert. denied*, 522 U.S. 1059, 118 S.Ct. 716, 139 L.Ed.2d 657 (1998). Based on the facts and circumstances of this case, we cannot say that this questioning rose to the level of plain error. *See Bunce v. State*, 1987 OK CR 96, ¶ 12, 738 P.2d 159, 163 (whether a comment rises to the level of plain error depends on the particular facts and circumstances of each case).

Furthermore, this was not an unambiguous question regarding DeLozier's right to remain silent. It was more in line with questioning regarding "how long did it take for you to come up with such a ridiculous story?" Therefore, we cannot say that it was a reference to DeLozier's pre-trial silence.

■ ¶ 27 In proposition five, DeLozier argues that instructions regarding impeachment of witnesses unfairly highlighted his impeachment. His argument is based on the fact that DeLozier was named in the "prior conviction" impeachment instruction and Nathaniel Madison was not named in the "prior inconsistent statement" impeachment instruction. Again there was no objection to these instructions as given. Therefore, we review for plain error only. This proposition does not rise to the level of plain error.

¶ 28 DeLozier argues in proposition six that prosecutorial misconduct in both stages of the trial deprived him of due process and reliable verdicts. During first stage, DeLozier claims that (1) the prosecutor bullied and badgered him during cross-examination with assumed and speculative facts; (2) the prosecutor argued facts not in evidence in his first stage closing; and (3) the prosecutor misled the jury by misstating the law, told them that they had a duty to convict and incited societal alarm.

¶ 29 During the second stage, DeLozier claims that (1) the prosecutor improperly bolstered his case for the death penalty by injecting his personal opinion; (2) the prosecutor attacked trial counsel by calling his argument a speculative account of the victim's suffering; (3) the prosecutor argued facts not in evidence; (4) the prosecutor misled the jury by misstating the law regarding the method they should use to arrive at a sentence and denigrated the mitigating evidence, and opined that DeLozier's remorse was not genuine; and (5) the prosecutor gave personal testimony about how this crime had affected him.

¶ 30 None of the comments complained of were objected to at trial. As to these remarks, DeLozier has waived all but plain error. *Smith v. State*, 1996 OK CR 50, ¶ 28, 932 P.2d 521, 531, *cert. denied*, 521 U.S. 1124,

117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997). Our review of the record reveals that none of the comments were so egregious as to constitute plain error. *Id.*

## PUNISHMENT ISSUES

¶ 31 In proposition thirteen, DeLozier attacks the constitutionality of the aggravating circumstances found in his case. We have held that these aggravators are constitutional, and we are not persuaded to change our stance on this issue. *See Toles v. State,* 1997 OK CR 45, ¶¶ 58–62, 947 P.2d 180, 192, *cert. denied,* 524 U.S. 958, 118 S.Ct. 2380, 141 L.Ed.2d 746 (1998).

¶ 32 In proposition nine, DeLozier argues that the instructions given during second stage deprived him of due process. DeLozier complains generally about instructions that he claims are ambiguous, not given or vague. He admits that this Court has reviewed issues outlined in this proposition and has consistently ruled against appellants. DeLozier raises the following specific issues:

A. The instructions on aggravating circumstances, great risk of death to more than one person, the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution, and the probability that the defendant would constitute a continuing threat to society, 21 O.S.1991, 701.12(2),(5) & (7), did not provide specific and detailed guidance.

B. The jury was not told that it had to determine DeLozier killed, intended to kill, or acted with reckless indifference to human life before it could consider the death penalty.

C. The jury was not told that findings of mitigating circumstances need not be unanimous and that they need not be proved beyond a reasonable doubt.

D. The jury was not instructed that they could impose a punishment less than death even if they concluded that the aggravating circumstances outweighed the mitigating evidence.

E. The jury was not adequately informed about the meaning of life and life without parole.

F. The jury was not told what would happen in the event of a deadlock.

G. The jury was not told that aggravating circumstances must clearly outweigh the mitigating evidence.

¶ 33 First, the aggravating circumstances found in this case have been found to be constitutional. *Toles,* 947 P.2d at 192. As long as this Court provides a constitutionally adequate narrowing construction to the aggravating circumstances, reversal is not mandated. *See Walton v. Arizona,* 497 U.S. 639, 654, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990) ("as we held in *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), a state appellate court may itself determine whether the evidence supports the existence of the aggravating circumstance as properly defined or the court may eliminate consideration of the factor altogether and determine whether any remaining aggravating circumstances are sufficient to warrant the death penalty.")

¶ 34 Our discussion regarding the sufficiency of the evidence presented to prove the aggravating circumstances reveals the narrowing process which properly defines the aggravators in this State. Therefore, there is no reversible error in failing to instruct the jury about these limiting factors.

¶ 35 DeLozier's arguments in sub-propositions B, C, D, E, F and G have been consistently rejected by this Court and we are not persuaded to reconsider those issues now. *Johnson v. State,* 1996 OK CR 36, ¶¶ 31–33, 43, 47, 928 P.2d 309, 317–319 (sub-propositions B, C, D, E and G); *Malone v. State,* 1994 OK CR 43, ¶ 16, 876 P.2d 707, 713 (sub-proposition F)

¶ 36 In propositions ten, eleven and twelve DeLozier argues that there was insufficient evidence to prove, beyond a reasonable doubt, the three aggravating circumstances. The jury found that DeLozier murdered Morgan to avoid lawful arrest or prosecution, and the jury found, regarding both murders, that DeLozier would constitute a continuing threat to society and that he created a great risk of death to more than one person. 21 O.S.1991, § 701.12(2), (5) & (7). When reviewing the sufficiency of

the evidence of aggravating circumstances, the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt. *Powell v. State*, 1995 OK CR 37, ¶ 82, 906 P.2d 765, 784, *cert. denied*, 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996), *citing, Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

¶ 37 Evidence revealed that DeLozier murdered two individuals. Both victims were together in a small camper. DeLozier stepped inside and fired a shotgun. Madison then stepped inside and fired a .22 rifle. Bullard was shot with a shotgun and a .22 rifle. Once back outside the camper, Madison fired several shots into the camper with the .22. Madison called for Morgan to come out of the camper after Bullard had been shot and told Morgan that nothing would happen to him. When Morgan stepped outside, he was shot and killed. DeLozier and the others went to the Morgan campsite with the intent to steal the generator and other property. DeLozier and the others had visited the Morgan campsite earlier, so they would be suspects in any theft.

¶ 38 With Morgan and Bullard dead, there would be two less witnesses to point to DeLozier and the others as suspects. Furthermore, after killing Bullard, DeLozier could not leave Morgan to tell what had happened. With Morgan alive, a more timely search for the suspects would have been undertaken.

¶ 39 These murders were undertaken in a cold-blooded manner. These two men were killed merely for their possessions, a generator and camping supplies. Even after this murder, DeLozier threatened to kill another inmate in the county jail. Prior to the murders, DeLozier killed a police dog and injured another.

¶ 40 The aggravating circumstance, murder to avoid arrest or prosecution, requires a predicate crime for which a defendant seeks to avoid arrest or prosecution, separate from the murder with which he is charged. *Hooper v. State*, 1997 OK CR 64, ¶¶ 40–41, 947 P.2d 1090, 1106, *cert. denied*,

524 U.S. 930, 118 S.Ct. 2353, 141 L.Ed.2d 722 (1998).

> The great risk of death to more than one person aggravating circumstance is proved by a defendant's acts which create a risk of death to another "in close proximity, in terms of time, location, and intent" to the killing. It may be appropriate where only one person is killed, where more than one person is killed, or where more than one person is killed but the murders are not contemporaneous.

*Le v. State*, 1997 OK CR 55, ¶ 33, 947 P.2d 535, 549, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). The continuing threat aggravating circumstance may be supported by the callous nature of the crime and evidence of a defendant's other offenses, either adjudicated or unadjudicated. *Hooper*, 947 P.2d at 1107. The facts in this case fully support the jury's finding of the aggravating circumstances.

¶ 41 In part of proposition ten, DeLozier argues that the prosecutor misled the jury about the meaning of the avoiding lawful arrest aggravating circumstance and that the trial court failed to correctly instruct the jury about this aggravating circumstance.

¶ 42 Defense counsel did not object to the comments of the prosecutor regarding the avoiding lawful arrest aggravating circumstance; therefore, we review for plain error only. In reviewing the entire record, the comments do not rise to the level of plain error. We have consistently held that the instruction on this aggravator, which mimics the statute, is sufficient. *Boyd v. State*, 1992 OK CR 40, ¶ 25, 839 P.2d 1363, 1371, *cert. denied*, 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993). We decline to stray from this holding.

¶ 43 DeLozier claims in proposition fourteen that the portion of the victim impact evidence which included an opinion that the proper sentence was one of death violated his federal and state constitutional rights. A victim's recommendation of punishment is allowable in a capital jury sentencing proceeding but will be viewed by this Court with a heightened degree of scrutiny. *Ledbetter v. State*, 933 P.2d 880, 891 (Okl.Cr.

1997); *Willingham,* 947 P.2d at 1086, *see* 22 O.S.Supp.1997, § 984.[3] The recommendation of sentence came from one witness whose opinion was limited to, "Yea, I can tell them the penalty I think is the only penalty that's appropriate would be the death penalty." This statement did not violate DeLozier's rights.

¶ 44 In proposition fifteen DeLozier claims that the omission of uniform instruction OUJI–CR 439 setting forth mitigating factors violated 21 O.S.1991, § 701.11 and his rights under federal and state constitutions. DeLozier failed to preserve this error by requesting the instruction or by objecting to the instructions given. In fact trial counsel argued that this instruction should not be given because it could operate to limit the jury's consideration of mitigators. After consideration of the entire record, we find that the failure to give this instruction was not plain error.

## INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 45 DeLozier argues in his first proposition that he was denied effective assistance of counsel due to alleged errors of counsel during the trial. Appellant must meet the two-pronged test set out in *Strickland v. Washington*[4] to show ineffective assistance of counsel. *Lewis v. State,* 1998 OK CR 24, ¶ 48, 970 P.2d 1158. First, Appellant must show that trial counsel's performance was deficient. This requires a showing that trial counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Second, he must show he was prejudiced by the deficient performance and that counsel's errors deprived him of a fair trial with a reliable outcome. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

¶ 46 In review of such a claim, we are to accord a strong presumption that counsel was at least constitutionally competent. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Willingham,* 947 P.2d at 1078. We will judge counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct, and ask if the conduct was professionally unreasonable. *Hooper,* 947 P.2d at 1111. An error must be so egregious that it indicates deficient performance by counsel, falling outside the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 687–89, 104 S.Ct. at 2064–65. Many significant errors will not meet this highly demanding standard. *Kimmelman v. Morrison,* 477 U.S. 365, 381–82, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). Those errors that require reversal do so because they reflect performance by counsel that has "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

¶ 47 DeLozier first alleges that trial counsel was ineffective because he failed to investigate and use available evidence that was inconsistent with the State's theory of guilt and consistent with the defense. DeLozier complains that trial counsel failed to call two witnesses during the first stage of trial. The decision to call witnesses during trial is usually one of strategy and will not be second guessed on appeal. *See Boltz v. State,* 1991 OK CR 1, ¶ 31, 806 P.2d 1117, 1126, *cert. denied,* 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991) (it is a reasonable strategic choice for an attorney to channel his investigation into fewer than all plausible lines of defense upon which he bases his strategy and his choices on the basis of those assumptions are reasonable. "An attorney's

---

**3.** While I recognize that a majority of this Court has held that both "victim impact evidence" under 21 O.S.Supp.1997, § 701.10(C) and "victim impact statements" under 22 O.S.Supp.1997, §§ 984 and 984.1 are admissible before a jury in a capital sentencing procedure, I continue to be of the opinion that only "victim impact evidence," defined in section 701.10(C) as evidence about the victim and the impact of the murder on the family of the victim, is admissible before a jury in a capital sentencing proceeding.

It is my opinion that "victim impact statements," defined in § 984, and provided for in § 984.1, including the victim's opinion of a recommended sentence, should only be presented to the trial judge at the formal sentencing proceeding. I also believe that the language of the legislature supports my position on this issue.

**4.** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

decision not to interview witnesses and to rely on other sources of information, if made in the exercise of professional judgment, is not ineffective counsel.")

¶ 48 DeLozier bases his argument on statements made by Michelle DeLozier Tate and Bubba Oliver to O.S.B.I. Agents and the Preliminary Hearing testimony of Oliver about statements they heard DeLozier and Nathaniel Madison make soon after the "theft." After reviewing DeLozier's allegations, we find that the failure to use this evidence was not so egregious that it indicates deficient performance, falling outside the wide range of reasonable professional assistance.

¶ 49 Next, DeLozier claims that trial counsel could have pointed out, more thoroughly, inconsistencies in Nathaniel Madison's testimony and his statement to the O.S.B.I. Again, we find that the failure to use this evidence did not constitute deficient performance.

¶ 50 As his second basis for a claim of ineffective assistance of counsel, DeLozier claims that trial counsel failed to protect his rights to be tried by an impartial jury. De-Lozier raises this issue substantively as proposition 8. DeLozier claims trial counsel failed to remove jurors who would automatically vote for the death penalty.[5] The first juror DeLozier cites, juror 14, responded that she could fairly consider the other two options of life without parole and life. The trial court properly refused to remove her for cause and trial counsel used a preemptory challenge to remove her. This in no way constitutes ineffective assistance of counsel.

¶ 51 The second juror, juror 49, first responded that he/she could not give fair consideration to life without parole or life. Later, this juror stated that he/she would put personal feelings aside and follow the law regarding punishment. Trial counsel did not challenge for cause, but removed this juror with a preemptory strike. We cannot say, based on the record in this case, that trial

counsel was ineffective for failing to challenge this juror for cause.

¶ 52 The third juror, juror 18, told trial counsel that he could consider all three punishments. This juror remained on the jury and ultimately was foreman of the jury. The fourth juror, 41, stated that he would follow the directions of the court in deciding punishment and fairly consider all three punishments. This juror also remained on the jury panel. We cannot say that, based on the record, trial counsel was ineffective for failing to remove these last two jurors either by a challenge for cause or by preemptory strike.

¶ 53 DeLozier's third allegation of ineffective assistance of counsel deals with trial counsel's failure to object to the prosecutor's cross-examination of DeLozier and his failure to object to alleged improper comments in closing. DeLozier raises these issues substantively in propositions 4 and 6. We have reviewed the remarks and note that trial counsel failed to object to the cross examination and the closing argument of the prosecution. Upon reviewing the entire record in this case, we cannot say that the failure to object to these comments was ineffective assistance of counsel.

¶ 54 Lastly, DeLozier claims as ineffective assistance trial counsel's failure to seek the prohibition of the disclosure of his prior convictions before eliciting the information during direct examination. Trial counsel was not ineffective for failing, *in limine*, to prevent the disclosure of DeLozier's prior convictions. The basis for this argument is tenuous at best.

¶ 55 In addition to the ineffective assistance of counsel claims raised by DeLozier in his brief in chief, he filed an Application for an Evidentiary Hearing asserting additional claims which he contends are supported by evidence not in the record but which were available to defense counsel at the time of trial. *See* Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1997). In

---

5. The trial court used an anonymous numbering system in "labeling" each juror, thus the num-

bers in lieu of names in this Opinion.

this application DeLozier requests an evidentiary hearing on the failure of trial counsel to investigate and present evidence to disprove the State's evidence that DeLozier, while in jail, confessed to killing two men while threatening another. Rule 3.11(B)(3)(b) allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of trial. . . ." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (1997).

¶ 56 Believing that Appellant had met this burden, we remanded this case to the district court for an evidentiary hearing. In our remand order we limited the inquiry to items urged in Appellant's motion for an evidentiary hearing, specifically whether trial counsel was ineffective for failing to investigate and present evidence which would have disproved the State's evidence that he admitted to killing the victims and threatened to kill another person. We directed the trial court to determine the availability of evidence or witnesses, the effect of the evidence or witnesses on the trial court proceedings, whether the failure to use a witness or item of evidence was trial strategy, and if the evidence or witnesses were cumulative or would have impacted the verdict rendered. *See,* Rule 3.11(B)(3)(b)(iii), *Rules of the Oklahoma Court of Criminal Appeals,* Ch. 18, App. (1997).

¶ 57 We first commend the trial court on the manner in which it conducted the evidentiary hearing and the well-written Findings

of Fact and Conclusions of Law. Such work makes it easier for us to resolve this issue by having full understanding of the facts. We will give deference to the trial court's finding of facts and conclusions of law. We find that the findings and conclusions are supported by the record despite DeLozier's claim to the contrary.

██ ¶ 58 In Appellant's application for an evidentiary hearing he identified two specific instances which he claims amounted to ineffective assistance of counsel. He claimed that trial counsel's failure to interview and present Rodney Broades as a witness was ineffective. He also claimed that trial counsel's failure to present evidence that Mussett could not have visually identified him as who was allegedly yelling at Broades was ineffective assistance. Because, these were the only factors presented in the application by DeLozier, our review is limited to only these factors.[6] Rule 3.11(B)(3)(b)(ii), *Rules of the Court of Criminal Appeals,* Ch. 18, App. (1997).

¶ 59 Trial counsel had information before the trial began that DeLozier was alleged to have made incriminating statements while he was arguing with Broades in the county jail. Mike Mussett, another jail inmate, testified at trial that DeLozier stated, "I've already killed two men, mother fucker; I won't hesitate to kill you."

¶ 60 An O.S.B.I. report prepared by agent Birchfield and provided to trial counsel before trial reported that Broades told Birchfield about the statements on November 27, just a few days after the statements were alleged to have been made. Broades reported that DeLozier antagonized him with racial slurs and called him a "nigger" repeatedly. Broades told Birchfield that DeLozier stated, "You mother fucker, I've killed two people before. What makes you think I'm afraid to kill a Nigger." Broades also reported that DeLozier stated that "If they were niggers, he would have pled guilty to killing them."

---

6. At the hearing after remand, DeLozier also claimed that trial counsel was ineffective for failing to call Tony Loving as a witness. Because the State did not object to this evidence, the trial court allowed DeLozier to present it. However, we are bound by our rules not to consider it in this appeal. Contemporaneous with DeLozier's

supplemental brief on this issue, he has filed a Motion to Supplement Record seeking to supplement the record with information concerning Tony Loving and information which should have been introduced at the hearing on remand. Because we will not consider this information on direct appeal the motion is denied.

¶ 61 Investigation by DeLozier's appellate counsel revealed that Broades was willing to testify that DeLozier never made a statement that he had killed two men and that DeLozier had not threatened to kill him. DeLozier claims that trial counsel was ineffective for relying on the O.S.B.I. report and not seeking out Broades to either confirm or refute the O.S.B.I. report.

¶ 62 At the evidentiary hearing, Broades testified that he and DeLozier argued several times during the month of November and that DeLozier called him a "nigger" many times. Broades testified that DeLozier never threatened to kill him nor did he admit to killing two men. However, Broades testified that he accused DeLozier of being in jail for killing and DeLozier responded that if they had been niggers, "I would have pled guilty to it." He called the O.S.B.I. report a lie.

¶ 63 This testimony certainly refutes the testimony of Mussett. The first time Broades revealed this story to an appellate investigator was one and one-half years after DeLozier allegedly made the statements. However, this story is contradicted by the statements Broades made to the O.S.B.I. investigator three days after DeLozier allegedly made the admission and threat.

¶ 64 Trial counsel testified that he made a choice not to seek out Broades and call him as a witness because nothing good could come from his testimony. He had previously made the statement that he did not contact Broades because he could not find him. The reasons trial counsel failed to investigate Broades are irrelevant. Trial counsel testified he would not have called Broades to testify even if counsel had known that Broades had recanted his story, because counsel's strategy was to de-emphasize the admission and to attack Mussett's credibility.

¶ 65 The trial court found that if called as a witness Broades could have testified that DeLozier actually made the incriminating statements or Broades could have testified that DeLozier did not make the incriminating statements and be faced with being impeached with his prior convictions and his prior inconsistent statement. We find that the failure to utilize Broades at trial did not prejudice DeLozier.

¶ 66 The evidence that Mussett could not have visually identified DeLozier as DeLozier made the incriminating statements is contradictory and disputed. At this hearing, evidence was presented that if the cell block door was open, Mussett could not have seen the window where DeLozier's face was visible. Furthermore, witnesses testified that the cell block door was always open. However, there was no evidence the cell block door was open and blocking the view when DeLozier made the statement. DeLozier's own exhibit showing the view of the window, had the door been open, shows that a visual identification could have been made.

¶ 67 Trial counsel, after Mussett testified, toured the jail and requested that jurors be allowed to view the jail area so that they could judge Mussett's testimony in a different light; however that request was denied. The failure to present any other evidence concerning Mussett's visual vantage point did not constitute ineffective assistance of counsel.

¶ 68 We find, after having the benefit of the evidentiary hearing and the trial court's findings of fact and conclusions of law, that trial counsel was not ineffective for failing to interview Broades prior to trial or for failing to call him as a witness. *Boltz,* 1991 OK CR 1, ¶ 32, 806 P.2d at 1126. Trial counsel was also not ineffective for failing to present more evidence on the issue of whether Mussett could actually identify DeLozier when he made the incriminating statements. We find that counsel's failure to utilize all possible evidence did not alter the outcome of this trial, nor did it render the result of this proceeding fundamentally unfair or unreliable. *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993).

¶ 69 In proposition sixteen DeLozier urges this Court to review the aggregate impact of the errors alleged. Because we have found no individual error present, there can be no accumulation of error. *Humphreys v. State,* 1997 OK CR 59, ¶ 42, 947 P.2d 565, 578, *cert. denied,* 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998).

## MANDATORY SENTENCE REVIEW

¶ 70 Pursuant to 21 O.S.1991, § 701.13(C), we must determine whether the

sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor and whether the evidence supports the jury's finding of the aggravating circumstance. The jury found, in both counts, that DeLozier knowingly created a great risk of death to more than one person and that there existed the probability that DeLozier would commit criminal acts of violence that would constitute a continuing threat to society. 21 O.S.1991, §§ 701.12(2) & (7). Additionally, in count one, the jury found that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. 21 O.S.1991, § 701.12(5). We have found that these aggravating circumstances were supported by sufficient evidence.

¶ 71 The mitigating evidence argued by DeLozier was his young age, 19; his growing up in an abusive home; his addiction to drugs; others' opinions that he was a caring, loving person before he became addicted to drugs; and the adequacy of punishments less than death. Further, the jury was instructed they could determine mitigation from the evidence presented.

¶ 72 When we independently weigh the mitigating evidence against the aggravating circumstances which were each proven beyond a reasonable doubt, we find the jury's determination that the aggravating circumstances outweigh the mitigating circumstances is amply supported by the record.

¶ 73 Finding no error warranting reversal or modification, Judgment and Sentence of the District Court of McCurtain County is **AFFIRMED.**

STRUBHAR, V.P.J., and JOHNSON, J., concur.

CHAPEL, P.J., and LUMPKIN, J., concur in results.

